Alright, we're ready now. Go for it. Thank you, Your Honor. May it please the court, Thomas Siegel from the Sitara Law Group for Appellants, and I will reserve five minutes. So the crux of this case is that the District Court applied an erroneous legal standard in granting summary judgments. The underlying factual issue, the legal issue, is that the appellant's time participating in an employer-mandated wellness program is compensable under California law. California law, under the Morelia case, instructs that employee time is compensable under two different situations. First, if the time is subject to the control of the employer. And second, if the employer suffers or commits the employee to work. Now, we believe that under both of those tests, one time is compensable. If I'm speaking for Celeste Mason-Pax, it's my understanding that your client agrees that CVS never required the client to sign up for medical insurance, correct? Yes. I mean, that was her testimony. I mean, that was her testimony. She was not required to complete a wellness exam or review as a condition of her employment. Yes, and a wellness exam or review are not part of her child's duties. Yeah, the first thing I would say, I mean, I'm just trying to understand it, because those are pretty significant facts. In fact, as I understand the deposition, in doing the wellness exam, in some she already does with her doctor. Yes. Yes, she completes the health review at home. She doesn't consider the time she spends taking the exam, completing the first edition, as it were. She could not even have been asked to sign up for the insurance, or not. And nobody instructs her when to do the exams or reviews. And now I'm supposed to find that somehow that is controlled. Well, let's go back to one of those things in there, which is that it's not a condition of employment. I mean, I don't think a condition of employment is met by meeting some of those questions. That's why when I read her stuff, I was having a tough time. So, what the Alcatraz case tells us is that something is not voluntary. The employee, as a practical matter, has no real choice. So you're talking about the Alcatraz case? Yes. The case they descended in. That's right. And I have thought I've registered in fairness to say that. Although, frankly, I know Alcantara pretty good. This is no Alcantara. In Alcantara, the choice to commute in their own car or not was the employee's choice. But if choosing the company car, then the company required that the employees had to pay to keep the car secure. And there was no parking to do it. And so we said, there's a question of fact here. There is no requirement here from the company, CBS, that you do anything. So, in the Alcatraz case, my recollection is that the employees had the choice of driving the company-provided car home or leaving it in an unclothed lot. So the issue there, they had to pay if it was hurt. That's right. If the car was broken into, they would have to pay, which is why they considered that to be a reasonable choice. So, again, what they said was not that it's not a reasonable choice. It's a question of fact, which would have been this term on summary judgment. But it was the company's policy that forced that. The company forced them to pay if the car was broken into. And therefore, they didn't provide them any parking. And therefore, it was a question of fact. There's nothing like that here. So, going back to the plaintiff's acquisition testimony, what it shows is that she was working for CBS for a number of years. She testified that one of the reasons why she continued working there was because, despite her relatively low pay, was that they provided health care coverage. At some point after she had been receiving the health care coverage for a number of years, they changed from a voluntary wellness program to a mandatory wellness program. Well, no, that's not correct. They changed to the fact that she could have had a wellness program if she wanted it. But if she didn't want it, she had to pay $600. Well, I think if something, if you're offered a choice where the result of not making the choice is that you're a low-wage employee, $50 a month, $600 a year, you're going to get less out of your paycheck. Well, but there is no case that says just because you're financially better that it's a condition of employment or financially worse. That doesn't make it a condition of employment. But is the employer exercising control of the employer? It doesn't issue control at all. You can either sign up for the wellness program, having signed up for the insurance, or you cannot. If you don't, you have to pay a little extra because not going to the wellness program might drop costs extra. Health Benefit Fund Company has to pay more, too. You have illusory arguments with regard to the health plan itself. Okay, you know, one being that because of the Affordable Care Act, if you don't go into the Act, you're penalized. You have to pay. And you have a couple other arguments as to why the overall insurance plan itself was illusory. But it seems to me that this is a question. It seems to me the question is with regard to the health care portion of it. In other words, once you're in the plan, you have the option to either take the health care or not if you don't qualify for it. Then you have to pay an extra $15 a month. And so it seems to me that the question with regard to this woman and others similarly situated is whether or not that is illusory. And it seems to me that is not illusory because they don't have to go through with a low-income person. It's going to be a hardship to them. But nonetheless, that's what she wants to get paid for the four hours for is whether or not she went through the trouble of signing up for that optional health care plan. That seems to me to be the issue. You don't think so? No, I mean, I think that if you look a little bit better at the Bono Enterprises Versus Bread showcase, which talks about control. They give the definition of control from a black-sport dictionary that control is to exercise restraint or direction upon the free action of. And again, the procedural posture in it is whether this is something that goes through a jury. And the CEO of CVS sent out a memo, I think it was by email, about the wellness program in which he said you have to complete this by a certain deadline. If you don't complete this by a certain deadline, there will be serious consequences. That's control. That's exercising direction upon the free action of. There is absolutely no evidence in this record that her job was threatened. That she couldn't have her job. That any of this had any condition to her job. All this is about is do I sign up for the insurance in the company or no? Do I sign up for, after that, extra stuff which can give me less health problems or no? And if I won't do it, then I pay 600 bucks. That's it. The company doesn't require anything. But I don't believe the test for income that's going to come from yours, if you don't do it, you're going to be fired. Is that what the case is? Well, it's got to be control. I mean, that's the problem. I don't find the control. But I believe that sending out a memo from the CEO of the company saying if you don't do this, is that the best? Is that memo your best argument? Well, also that imposing a financial penalty if you don't do something is an exercise of control. What do you mean it's a financial penalty? Well, they don't logically characterize it as a penalty. All it is is a way to make, well, the fact that you're not going to take care of your best health. I mean, it's your decision. You can either do your health the way you want to do it, or if you want to do a health exam so that you can do something to help with the health, you can do it that way. So, let's move on. Well, you've got an evidently, you don't have to. Well, I mean, somebody can, the details of it are controlled. They don't just say you have to call your doctor twice a year and once a year. They say you have to do these biometric tests, you have to fill out all these questions. She was fired because she couldn't complete them. And it's also the sufferer who's in the $50 month supply. So, it may have financial consequence whether you characterize it as a penalty, it's not charged, or, well, it's deferential. She has $50, $600 a year, that's a substantial amount of money. Let me ask you guys a little bit about the food stuff that are permitted to work. Isn't it true that your client was free to schedule her appointments and fill out the questionnaire when she wanted to? That is true of the convenient term. But it also had to be done at a CVS-made clinic. Well, but there was no interruption from CVS. She was not required to be reachable by her supervisors. She didn't have to be ready to perform other duties. Even she said it wasn't work, wasn't part of her normal duties. How can that be? Suffered or permitted to work. Well, if you look at the Peddinghall case, it gives a definition when they were interpreting the suffering of committed or fired. Peddinghall. But there the employer required the employees to participate. But in applying, they did, and yet there was a financial hazard. There was no requirement. But they give a definition of work as a sufferer permitted, which says that if it's directed by, under the control of them for the benefit of the employer, it's work. All of those who met here, they said the details of it. They directed it. And the employer benefited by keeping it up to the cost of the dollar. A little bit. That's true, but she benefits. But this is a good thing. It's only a good thing to have health care. I ask all of CBS employees who are subject to this and recover for the time that it takes to do the wellness questionnaire. Yes. So all hours of my time. Thank you. Good morning, Your Honor. May I please inquire? My name is Greg Iskander from the Mendelsohn Council for Government of H.C.V.S. I think as the court has addressed, the suit's positive fact in this case is that Ms. Watterson had the choice of whether or not to sign off the health care. The issue here is whether or not she participates in the wellness program only becomes an issue if she signs up for the health plan. If you don't sign up for the health plan, you're not subject, you don't even have an option to participate in the wellness program. And as Your Honor pointed out, she admitted in deposition that that was her choice. No one required her to do it. It's not a condition of employment. And it wasn't only admitted in deposition. It was an undisputed truth. This only judgment was conceded in the briefs. And then you get to the issue of, okay, now that you're voluntarily elected to participate in this plan, now that you have a choice as to whether or not to participate in the wellness program or not, and there's still a choice there, and that choice isn't illusory. Judge Piersol, you questioned whether the issue of whether something's illusory, which might bring it with you in Alcantar, isn't a first instance as to whether or not you have to sign up for health insurance or not. And frankly, that only came up because, as the district judge pointed out during the arguments, was, well, how can you even be arguing whether there's control over the wellness program when she signed up for insurance voluntarily in the first place? And that's when the whole, well, this is a life and people necessity issue came up. And as the district judge pointed out, that it's not necessitated by the employer. And again, there's no requirement to sign up for this. So, there's no control or suffering to permit when you sign up for the health plan. There's no control or suffering to permit when you sign up for the wellness and sports program. Even if there was control when you signed up for the health plan itself, it's for purposes of this simple discussion. My question really was, okay, even assuming that, nonetheless, when you get over here to the wellness plan, that's really the question. Whether there's control or not is the time of signing up for the overall health plan. Isn't the issue? It's whether or not there was control when you took the option or not. It seems to me. Well, I would submit that it'd be very difficult to say the employer controls you when you're trying to decide between participating in the wellness program or not. When it was a completely voluntary choice, that's nothing to do with your employment. In the first place, you didn't even put yourself in the health plan. Now, we have a situation where it's a requirement of the health plan, and again, not of the employer, by the way, but the health plan that says, look, here's your premiums. If you want to lower your premiums, you can participate in this bonus rewards program. And, again, this is something that's expressly authorized by a rest of these wellness programs. And there's reasons for that. We want people to be healthy and to take these annual exams and to know their health statistics and that sort of thing. And so it characterizes it in five different cases. Was that always the case? In other words, I thought that this health plan, that this wellness portion came on at some point during the offering of insurance over the years by your employer. Well, actually, what the evidence in the record is, is that the wellness program was always part of the health plan. What happened in the period in question here with the appellant was that they instituted the wellness differential. The first year, they did, unfortunately, call it a wellness surcharge, but the fact of the matter was, even though they called it a wellness surcharge, that freemium was always the same. You were just going to be either paying $50 less a month or 50, or you were going to pay the normal freemium. And then, recognizing that that caused some confusion, calling it a surcharge because you were never paying more than what your normal freemium was, they corrected it to call it a wellness differential. The program for getting a free health exam, being able to all do that, always existed. What the 30 pages of 6 witness testified to was we were always trying to encourage people to do that via various means, rewards, you get a free iPod and iPad if you do this, or you get to be in a lottery, and to encourage more and more participation. They instituted this wellness differential where you could actually pay $600 a year less if you participated in these programs. And I do think it falls squarely, the judge didn't commit any error in interpretation of the law. He relied on Morellian. He relied on Overton. And this falls squarely within the majority's opinion in Alcatar, where, again, this was not required by the employer, and there was no control by the employer. And, interestingly, as cited by Palin's briefs, yes, when this wellness rewards program, where the wellness differential was kicked in, approximately 90% of the participants in the health plan, again, this is a little over 100 employees, 90% of the participants in the health plan participated in the well rewards program. 10% did it. And that's actually the same number as in Overton. In Overton, the California court said, this can't be a de facto requirement, it's not illusory, because 10% of the people didn't take the employer shuttle when they went from the parking lot to Disneyland. So, again, the facts of this case fall squarely within all the California court's interpretations, in Condeola v. CPS, early interest of remote packing, and Overton v. Disney, as well as this court's analysis in Alcatar v. Walmart. If there are any questions, I'll let them know. Thank you. If you want to sum it up in a minute. So, let me briefly address a couple of things that the Boxing Council said. He said that the health plan is required not by the company, but by the health plan. There's no evidence in the records. This quotes that the only evidence we have is that the CEO sent out an email about the wellness program. The district court really didn't determine whether the plan was the same as CPS, or didn't just assume that they were the same. But the district court found that the argument had been waived, because it was very recently replied briefly, and also found that it would create disputed issues in class. It's worth noting that while they say that all of this is expressly authorized by a resident, they only directed their preemption arguments to one cause of action in the district court, and we conceded as that cause of action. To the extent that it's relevant, the EEOC says wellness programs are simply by-products and are unreasonably expensive, and there certainly are some facts there relating to being by-products and are unreasonably expensive. But we really have to grant your policy for judicial notice to get to that argument. That's true. But you didn't present it to the district court. And then, you know, the other issue here, there is another aspect that hasn't been mentioned, which is that this wellness questionnaire first, the company receives the data from this wellness questionnaire. They receive it in aggregate form, so that's providing a benefit to the company. Now, most of the questions are related to health, in one way or another, and maybe some of them are intrusive, but there's a section on it called the productivity section, which has absolutely nothing to do with health, and it's asking them, how often do you show up, how often do your coworkers show up? Do you have me in your job? Do they change the questionnaire if one receives it some point along the way? Do they change the questionnaire? Yeah, they simplified the questionnaire considerably at some point. I actually don't know if that's in the revised questionnaire, but it was definitely in the one that the plaintiff filled out. I see a couple of questions. Did you really make this argument to the district court? Well, we, we, it was concluded in the facts. Oh, you didn't really? Well, what we said about it is, but you said it was at work. You said, it helped the employer control the health costs. That's all you're working to. We did not approve. We didn't, we didn't argue this specifically, but we suddenly drew the district court's attention to that as one of the Ronald O. Thomas. Okay. Okay. Thank you, thank you very much. Thank you very much, both of you, for your argument. Case 1516623 is submitted. And we are adjourned for today. Thank you.
judges: Schroeder, N.R. Smith, Piersol